EDNA D. LONGENECKER *v.* PHILIP S. ZANGHI
[No. 18, October Term, 1938.]

308

*Decided November 2nd, 1938.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Walter L. Clark* and *J. Gilbert Prendergast*, with whom was *Clater L. Smith* on the brief, for the appellant.

*Everett L. Buckmaster* and *George H. Dowell*, with whom were *Weinberg, Sweeten & Green* on the brief, for the appellee.

PARKE, J., delivered the opinion of the Court.

The judgment below was for the damages sustained by the plaintiff as a result of the collision within the lines of the intersection of two highways of his truck with the automobile of the defendant.

The plaintiff, Philip S. Zanghi, owns and operates motor trucks under the name of the Red Line Transfer Company. He was driving his loaded new truck northward on the Jarrettsville Road in the early sunny afternoon of August 5th, 1937, and, as he entered the intersection of the Paper Mill Road with the highway on which he was traveling, a collision happened between his motor truck and an automobile driven eastward on the Paper Mill Road by Edna D. Longenecker, the owner, who was accompanied by a friend, Freda Snyder. The Jarrettsville

Road is of concrete construction and is between fifteen and sixteen feet in width. The Paper Mill Road is slightly less wide and has a macadam surface. Both roads are public highways and would intersect at right angles except that the Jarrettsville Road bears slightly to the west at the crossing. In the northwest corner of the intersection there is a gas station and store, and on the southwest corner there is a gas station and building, which, as both drivers neared the crossing, partly obstructed the view of the driver of the truck on the Paper Mill Road for a short distance west of the crossing, and the view of the driver of the automobile on the Jarrettsville Road for a short distance south of the crossing. The intersection of the highways was in the open country and there were no traffic lights or other methods of control. When the accident occurred there was no travel to interfere with the operation of the motor vehicles of the plaintiff and defendant. The plaintiff's testimony tended to prove that he was approaching the crossing on the east or right side of the Jarrettsville Road at the reduced speed of from twenty-five to thirty miles an hour, and, when about fifteen feet away from the southern limit of the Paper Mill Road, he looked for traffic, and then first saw the defendant's automobile, which was about thirty to forty feet west of the crossing and moving towards it. The automobile was in the north line of travel and, so, on the wrong side of the highway, and was going at the rate of between thirty-five and forty miles an hour, which was by statute presumptively unreasonable, but not necessarily an unlawful speed. Code (1935 Supp.) art. 56, sec. 194, subsecs. (3), (4). Under normal conditions the plaintiff had the right of way at the crossing, but as soon as he realized that the defendant was not slowing down her automobile to stop, he applied his brakes as quickly as he could. At that time the truck was about three feet away from the crossing and, with its load and its speed, could have been stopped in ten feet on the slight upgrade. The right front side of the automobile struck the front part of the truck. The collision was within the intersection in its northeast

quarter and on the north side of the Paper Mill Road. There was further testimony on the part of the plaintiff to the effect that the plaintiff had not applied his brakes as soon as he had observed the defendant's automobile and the speed at which it was moving, because he had believed that the driver could and would stop to give him his right of way. After the accident, there is testimony that the defendant stated that she had not seen the truck. If true, this would prove that she had not looked when she would have seen the truck.

On the part of the defendant there was testimony from which the jury might have found that the view of the defendant to the south on the Jarrettsville Road was obstructed as her automobile approached until she arrived at a point eight or nine feet from the western line of the intersection. At that time she had, according to her testimony, reduced the speed of the automobile to twenty miles an hour and was to the right of the center of the Paper Mill Road. She saw the truck, and it was coming at a high rate of speed, which was estimated to be from thirty-five to forty-five miles an hour. The defendant immediately applied the brakes, but did not bring her automobile to a stop until it was out in the intersection, where it was hit by the front part of the truck. The defendant testified that she is not certain whether her automobile stopped west of the center line of the Jarrettsville Road, or stopped over the center line before the impact took place, nor whether the truck was on its own side of the road. There was testimony, however, of other witnesses, from which the jury might have found that the automobile was west of the center line and was there struck by the truck, which was not quite eight feet in width. In this connection there was testimony on the part of the plaintiff that the narrowness and bend of the highway and the width of the truck had a tendency to make the truck, although driven with reasonable care and skill, ride over the center line of the roadway. Code (Supp. 1935) art. 56, sec. 209, pp. 761, 762. The general rule that the motor vehicle should keep to the right of the center line does not apply

where the width of the road is too narrow for the rule to be observed.

It was on this conflicting testimony that the case went to the jury. The only exception taken is to the ruling of the court on the special exception to the fourth prayer and on the granted and rejected prayers. It is quite apparent that the resolution of the conflicting testimony was for the jury, and that the court rightly refused to take the case from the jury on the theory that the uncontradicted testimony established that the plaintiff was guilty of negligence which directly contributed to the happening of the accident.

If the jury should accept the plaintiff's version, it could find that plaintiff was in the enjoyment of his right of way and in the exercise of reasonable care. He was not bound to anticipate that a traveler approaching the intersection of the highway on the plaintiff's left would not be on the outlook for travel coming on the traveler's right while the latter kept the automobile in which he was traveling under such control and at such a rate of speed that, when he should see the near approach to the intersection of a motor vehicle on the right, the automobile could be stopped before entering the intersection. Code (1935 Supp.) art. 56, sec. 209. *Taxicab Company v. Ottenritter,* 151 Md. 525, 530, 135 A. 587; *Buckey v. White,* 137 Md. 124, 111 A. 777; *Huddy, Encyc. of Automobile Law* (9th Ed.) vol. 3-4, sec. 137.

What the plaintiff says he anticipated would be done the defendant asserts she attempted to do. She testified: "It was my intention when I slowed down at a point eight or ten feet from the edge of the road and saw this truck coming from my right, to stop and permit him to go by. I immediately applied my brakes when I saw the truck coming. I had slowed down to twenty miles an hour before I was eight or nine feet from the Jarrettsville Road." So, if the jury should find these facts, it cannot be maintained, under these circumstances, that the plaintiff entered the intersection in the face of an imminent danger which was apparent to him in the exercise of reasonable

care, as was true in the case of the *Sun Cab Co. v. Reustle,* 172 Md. 494, 500, 192 A. 292. Here the defendant affirms that she reduced the speed of the automobile as she neared the intersection. Because of the temporary obstruction of her vision to the right as she approached the intersection, her duty to exercise care and caution increased to a degree commensurate with the greater danger. At what point she slowed down before she reached the distance of eight or ten feet is uncertain. The plaintiff testified that he had not observed any slowing down when the automobile was, as he estimated, about thirty to forty feet west of the intersection. As soon as he realized that she was not attempting to stop, the plaintiff applied the brakes to the truck as quickly as he could. The front of the truck was at that time but three feet south of the intersection, and the truck was stopped wholly within the intersection, on his side of the highway. Thus, if the jury should resolve the conflict of testimony in favor of the plaintiff's theory of the cause of the accident, there is testimony in the case from which the jury may have found that the accident was directly caused by the failure of the defendant to exercise reasonable care and caution in stopping her automobile, without any contributory negligence on the part of the plaintiff.

Again, and quite to the contrary, there is testimony on the part of the defendant, which, if believed, would have been legally sufficient for the jury to have found that the negligence of the plaintiff in driving his truck towards a known dangerous crossing at so great and negligent speed that the truck was consequently out of control and could not be stopped in time to avert a collision with the defendant's automobile, which had entered the intersection of the highway without an adequate opportunity, because of the obstruction of her view to the right, to observe the rapidity of the rate of the speed at which the plaintiff was driving the truck. The credible testimony is in direct conflict, but the court cannot determine the issue of fact. There is testimony which supports the charge that the plaintiff was driving the truck at a

negligent speed before and when the accident occurred. The witnesses who testified for the defendant estimated this speed at from thirty-five to forty-five miles an hour. The statutory law prescribes that no motor vehicle shall be operated recklessly or at a greater rate of speed than is reasonable and proper with regard to the width, traffic and use of the highway, or so as to endanger the life or limb of any person; and, further, that if a motor vehicle shall be operated upon the public highway in the open country, outside of the limits of cities, towns or villages, at a rate of speed in excess of thirty-five miles per hour, such rate of speed shall be *prima facie* evidence that the person operating such motor vehicle is operating the vehicle at a speed greater than is reasonable and proper. No motor vehicle shall be operated at a speed greater than forty-five miles an hour under any circumstances or conditions; and if the motor vehicle be equipped with a commercial body, the weight of which, including the body and the load, is greater than three tons, the vehicle shall not be operated at a rate of speed greater than thirty-five miles an hour under any circumstances. Code (Supp. 1935) art. 56, sec. 194, subsec. (1), p. 746; subsecs. (3), (4), pp. 749, 750; *Jersey Ice Cream Co. v. Bach,* 161 Md. 285, 291, 292, 157 A. 277; *Hendler Creamery Co. v. Friedman,* 160 Md. 526, 154 A. 93. In view of these statutory provisions, and the testimony of the speed at which the motor truck was traveling and of the further fact that the truck was in use for commercial purposes and was loaded with five and one-half tons of fruit, there can be no question that there was testimony, although contradicted, from which the jury might have found that the plaintiff was guilty of negligence, which was operative at the time of the collision, and which, if so found, would bar the plaintiff from a recovery, if the jury should further find from the testimony that the defendant, in the exercise of reasonable care, prudence, and diligence, drove her automobile into the intersection at a time when the distant position and apparent movement of the plaintiff's truck would not

create, in the mind of a reasonably prudent and cautious person, any apprehension of danger of a collision between the two motor vehicles before the defendant's automobile would cross the intersection; and that such collision did occur because the said plaintiff carelessly and imprudently drove said truck at a high, unreasonable, and unexpected rate of speed over the intervening space between the two motor vehicles so as to be the direct cause of the collision.

It will be seen, by this review of the conflicting testimony on every material issue, that there was no error in the refusal to take the case from the jury on the ground of contributory negligence on the part of the plaintiff. *Biogini v. Steynen,* 124 Md. 369, 374, 92 A. 806; *Taxicab Co. v. Hamburger,* 146 Md. 122, 129, 125 A. 914; *Baltimore City v. Bassett,* 132 Md. 427, 104 A. 39; *Billotti v. Saval,* 165 Md. 563, 168 A. 890; *Bode v. Coal Co.,* 172 Md. 406, 415, 416, 191 A. 685.

The prayers granted instructed the jury with reference to the relative rights and defenses of the parties on the issues of fact raised by the testimony. In addition to the refusal to grant the demurrer prayer, the defendant assigns as error the action of the court in rejecting the special exceptions to the plaintiff's fourth prayer and in granting the prayer.

The fourth prayer instructed the jury that if the jurors found "there was want of ordinary care and prudence on the part of the plaintiff, yet he is entitled to recover, provided the defendant could have avoided the accident by the exercise of ordinary care after she saw, or by the use of ordinary care might have seen, that the plaintiff's truck was entering the intersection of Jarrettsville Road and Paper Mill Road in the path of her automobile and in danger of being struck by it."

The special exception is based upon the contention (1) that there is "no evidence in this case that the defendant could have avoided the accident by the exercise of ordinary care after she saw, or by the exercise of ordinary care might have seen, that the plaintiff's truck was entering the intersection"; and (2) that under the plead-

ings the plaintiff is precluded from relying upon the doctrine of the last clear chance. The first ground assigned does not challenge the legal sufficiency of the evidence, but goes further and asserts there is *"no evidence"* that the defendant could have avoided the accident by the exercise of ordinary care after she saw or by the exercise of ordinary care might have seen the plaintiff's truck was entering the intersection. It is unnecessary to repeat in detail the testimony, which was legally sufficient to afford a basis for the jury to find the issue of fact submitted by the prayer. It will be sufficient to say that there was legally sufficient evidence from which the jury might have found that, if she had looked before she had reached the point at which she first saw the truck, she would have seen the truck in time to have avoided the accident, whatever may have been the speed at which the plaintiff was approaching the crossing. According to the version of the defendant she was about eight or nine feet from the intersection when she first saw the plaintiff's truck. She immediately applied her brakes and she thereby stopped her automobile, but is uncertain whether she came to a stop west of the center line or whether the wheels of her automobile drifted over the center line before the impact occurred. So, if she had seen the truck and applied the brake when she was thirty-five or forty feet away from the intersection, the jury could have found that the automobile could have been stopped at a point of safety which would have permitted the truck to have made the passage of the intersection without the danger of a collision, no matter what might have been the speed or position of the truck. *Coplan v. Warner,* 158 Md. 463, 149 A. 1; *Shaivitz v. Etmanski,* 164 Md. 125, 164 A. 169; *Pennsylvania R. Co. v. Simmons,* 159 Md. 114, 150 A. 263; *United Rwys. & Elec. Co. v. Kolken,* 114 Md. 160, 78 A. 383.

The testimony on the part of the plaintiff is that he saw the defendant approaching thirty-five or forty feet away from the intersection. The jury might well have found that, as the plaintiff could see the defendant at this

distance from the crossing, so could the defendant have seen the plaintiff's truck when she was the same distance away, as their lines of vision were then coincident. Furthermore, there is testimony from which the jury might find that the plaintiff had the right of way over the defendant because they had both come to the lines bounding the intersection so closely in point of time as would require the driver from the left to yield to avoid the patent danger of collision. *Bode v. Coal Company,* 172 Md. 406, 412, 191 A. 685, supra. Without further laboring the point, the first reason assigned by the special exception is not well taken.

The second ground of exception is that the pleadings did not permit recovery based upon the doctrine of last clear chance. The plaintiff declared in an action for injuries which directly resulted from the careless, reckless and negligent manner in which the defenedant was operating her automobile at the time of the accident, and which were not due to any negligence on the part of the plaintiff directly contributing thereto. So, any form of negligence on the part of the defendant in the operation of the automobile, which was the proximate and exclusive cause of the plaintiff's injury, was within the pleadings. The plaintiff offered testimony tending to prove that the accident was due solely to the negligence of the defendant, without any negligence on the part of the plaintiff contributing. The defendant, as was her right, introduced the defense, which, if found to be true, tended to show that the plaintiff was himself guilty of negligence at the time of the accident, but this testimony was accompanied by other testimony which, if found by the jury to be true, would have the effect of establishing the negligence of the defendant as the proximate and exclusive cause of the plaintiff's injury. *Nelson v. Seiler,* 154 Md. 63, 76, 139 A. 564; *Coplan v. Warner,* 158 Md. 463, 468, 149 A. 1; *Parr v. Peters,* 159 Md. 106, 114, 150 A. 34. Such a development of the action is both normal and within the contemplation of the declaration. There is nothing decided by *State v. Glen Echo Park Co.,* 137 Md. 529, 533, 113 A. 85, in

conflict with this view. *State, use of Dodson v. B. & L. R. R. Co.,* 77 Md. 489, 493, 26 A. 865; Code, art. 75, sec. 28 (36), (37); *Bullen & Leake on Pleading,* 3d ed., 752-754; 1 *Poe's Pl. & Pr.,* secs. 468, 469, 460, 461.

The doctrine of the last clear chance is a phase and qualification of the rule which barred a recovery if the plaintiff had been contributorily negligent, and is associated in proof with that defense, and may be made the subject of evidence without its being specially disclosed by the pleading, *Supra; Balto. & Ohio R. Co. v. Mulligan,* 45 Md. 486, 491-493; *State, use of Kolish v. Washington etc. R. Co.,* 149 Md. 443, 459, 131 A. 822; *Legun v. State,* 167 Md. 339, 173 A. 565; *Payne v. Healey,* 139 Md. 86, 114 A. 693.

The form of the fourth prayer has the sanction of numerous precedents. *Pennsylvania R. Co. v. Construction Co.,* 153 Md. 19, 24, 137 A. 503; *Friedman v. Hendler Creamery Co.,* 158 Md. 131, 148 A. 426; *Lake Roland El. Ry. Co. v. McKewen,* 80 Md. 593, 597, 601, 31 A. 797; *Baltimore Traction Co. v. Appel,* 80 Md. 603, 31 A. 964; *City Passenger Ry. Co. v. Cooney,* 87 Md. 261, 267, 39 A. 859; *United Rys. & Elec. Co. v. Kolken,* 114 Md. 160, 170, 171, 78 A. 383; *Payne v. Healey,* 139 Md. 86, 97, 98, 114 A. 693; *United Rys. & Elec. Co. v. Watkins,* 102 Md. 264, 62 A. 234; *Baltimore Traction Co. v. Wallace,* 77 Md. 435, 26 A. 518. There may be situations in which the prayer is not applicable, as in *Legum v. State,* 167 Md. 339, 352, 353, 173 A. 565, where the negligence of the plaintiff and the defendant was concurrent, as defined by that decision. *Campbell & Sons v. United Rys. & Elec. Co.,* 160 Md. 647, 652, 154 A. 552.

Whatever may have been the act of negligence on the part of the plaintiff before he perceived the intention of the defendant to drive into the intersection, there is evidence tending to prove that, before either the truck of the plaintiff or the automobile of the defendant entered the intersection, the plaintiff, while on his right side of the highway, in an effort to stop the truck, applied the brakes of the truck and, streaking the highway with the

marks of the tires of the truck from a point a short distance south of the southern line of the Paper Mill Road, brought the truck to a stop within the intersection. Other than the attempt so made, the plaintiff had then no means at his command to avert the accident. It is the fact that here the negligent conduct of the plaintiff ceased and was succeeded by the exercise in the emergency before the collision of the reasonable care and skill of a diligent and prudent driver in the operation of the truck, which distinguishes the present case from *Legum v. State, supra,* and makes the operation of the doctrine of the last clear chance one for submission to the jury.

The facts are so conflicting that the case was one for the jury, and the granted prayers sufficiently stated the law and fairly submitted the various issues of fact for the jury's determination. Finding no errors sufficient for reversal, the judgment will be affirmed.

*Judgment affirmed, with costs to the appellee.*